# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

**SUSAN and BRYAN ANDREWS,**
        **Plaintiffs,**

**v.**                                **Case No. 05C0454**

**CHEVY CHASE BANK, FSB,**
        **Defendant.**

## <u>DECISION AND ORDER</u>

Plaintiffs Susan and Bryan Andrews bring this putative class action against defendant Chevy Chase Bank, FSB alleging that defendant violated the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 et seq., in a number of respects. Before me now are the parties' cross-motions for summary judgment and plaintiffs' motion for class certification.

## I.  FACTS

In June 2004, plaintiffs obtained a loan from defendant, a federally chartered bank, to refinance their home in Cedarburg, Wisconsin. In April 2004, defendant provided plaintiffs with preliminary disclosures about the loan, including a consumer handbook on adjustable rate mortgages, an adjustable rate mortgage ("ARM") disclosure and a preliminary Truth in Lending Disclosure Statement. At the closing, defendant provided plaintiffs with additional disclosures, including an Adjustable Rate Note ("ARN"), a Truth in Lending Disclosure Statement ("TILDS") and an Adjustable Rate Rider ("ARR").

Plaintiffs state that when they obtained the loan, they believed that the payments and the interest rate were fixed for five years and became variable thereafter. However, although

the minimum monthly payment was fixed for five years,[1] the interest rate was not. The loan carried a discounted or "teaser" interest rate of 1.950 percent, but that rate applied only to the first monthly payment, after which the interest rate increased every month according to a formula. As the interest rate increased, an ever increasing portion of the minimum monthly payment of $701.21 was needed to cover interest, and the minimum payment itself soon became insufficient to cover accrued interest.

I will discuss additional facts in the course of the decision. In addition, to facilitate reader understanding, I include defendant's TILDS as Exhibit A at the end of this decision.

## II. SUMMARY JUDGMENT MOTIONS

I will address the parties' summary judgment motions first and then proceed to plaintiffs' motion for class certification. See Cowen v. Bank United of Tex. FSB, 70 F.3d 937, 941 (7th Cir. 1995).

**A.    Applicable Law**

**1.    Summary Judgment Standard**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the

--------------------------------

[1]Plaintiffs had the option of paying more than the fixed minimum monthly payment.

2

nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

In evaluating a motion for summary judgment, I must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, I am "not required to draw every conceivable inference from the record-only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). Where, as here, both parties move for summary judgment, both are required to show that no genuine issues of fact exist, taking the facts in the light most favorable to the party opposing each motion. If issues of fact exist, neither party is entitled to summary judgment. Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir.1983).

## 2. TILA

Congress enacted TILA to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them. 15 U.S.C. § 1601(a). Congress delegated broad authority to the Federal Reserve Board ("Board") to implement TILA, and the Board has exercised such authority by promulgating Regulation Z, see Regulation Z, 12 C.F.R. § 226 et seq., and through its interpretations and official staff commentary. The Board's pronouncements are entitled great weight. Ford Motor Credit Co. v. Miholin, 444 U.S. 555, 565-70 (1980).

TILA requires lenders to disclose certain information about the terms of the loan to prospective borrowers. 15 U.S.C. § 1638; 12 C.F.R. § 226.17. If a loan contains a variable rate feature, lenders must provide certain preliminary disclosures, 12 C.F.R. § 226.19, and also disclose the existence of the feature at closing. 12. C.F.R. § 226.18. Lenders must

3

group information required to be disclosed by § 226.18 and segregate it from other information.  12 C.F.R. § 226.17(a).  Lenders often place such information on a separate sheet known as a Truth in Lending Disclosure Statement or TILDS.

All required disclosures must be clear and conspicuous.  15 U.S.C. § 1632(a); 12 C.F.R. § 226.17.   A disclosure is clear if it is reasonably understandable.  "If a disclosure is capable of more than one plausible interpretation, it is not clear."  Elizabeth Renuart & Kathleen Keest, Truth In Lending § 4.2.4 (5th ed 2003); see also Handy v. Anchor Mortgage Corp., 464 F.3d 760, 764 (7th Cir. 2006).   A disclosure is conspicuous if it "draws the consumer's attention."  Renuart & Keest, supra, § 4.2.4.  Thus, a lender may not disclose information so as to "obscure the relationship of the terms to each other." Commentary 226.17(a)(1).

The "sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor."  Smith v. Cash Store Mgmt., 195 F.3d 325, 328 (7th Cir.1999).  The standard for determining whether a disclosure is sufficient is an objective one.  Smith v. Check-N-Go of Ill., Inc., 200 F.3d 511 (7th Cir. 1999).   Further, "whether a particular disclosure is clear for purposes of TILA is a question of law that depends on the 'contents of the form, not on how it affects any particular reader.'"  Handy, 464 F.3d at 764 (quoting Check-N-Go of Ill., Inc., 200 F.3d at 515).  Similarly, whether a disclosure is conspicuous is a question of law.  Check-N-Go of Ill., Inc., 200 F.3d at 515.

TILA is a remedial statute, thus, consistent with its plain language, it must be construed liberally in favor of consumers.  Rossman v. Fleet Bank, 280 F.3d 384, 390 (3d Cir. 2002).  A lender must comply with the letter as well as the spirit of TILA.  Handy, 464 F.3d at 764.

4

"'[A] misleading disclosure is as much a violation of TILA as a failure to disclose at all.'" Barnes v. Fleet Nat'l Bank, 370 F.3d 164, 174 (1st Cir. 2004) (quoting Smith v. Chapman, 614 F.2d 968, 977 (5th Cir.1980)).

I will discuss certain requirements of TILA in greater detail in the course of the decision.

## B.     Alleged TILA Violations

### 1.       Disclosure of Payment Schedule

Plaintiffs first allege that defendant failed to disclose information concerning the loan's payment schedule as required by TILA.   Title 15 U.S.C. § 1638(a)(6) requires lenders to disclose "the number, amount and due dates or period of payments scheduled to repay the total of payments."   The disclosure must "reflect the terms of the legal obligations of the parties." 12 C.F.R. § 226.17(c)(1).  Where, as here, a loan involves both a variable interest rate and scheduled variations in payment amounts, the schedule of payments should "disclose the amount of any scheduled initial payments followed by an adjusted level of payments based on the initial interest rate."   Commentary § 226.17(c)(1)-12. Lenders specifying the period of payments scheduled to repay a loan "as a general rule . . . must disclose the payment intervals or frequency, such as 'monthly' or 'bi-weekly,' and the calendar date that the beginning payment is due."  Commentary § 226.18(g).

Information concerning the number, amount and periods of payments must be disclosed clearly and conspicuously. § 1632(a); 12 C.F.R. § 227.17.  Further, lenders must group such information, see Commentary § 226.18(g) and model forms (App. H No. 12, 13), and conspicuously segregate it "from all other terms, data, or information provided in connection with a transaction."   § 1638(b)(1).   Lenders may group and segregate the

5

information by enclosing it in a box, using bold print, dividing lines or setting it off in some other way.  Commentary § 226.17(a)(1)-2; see also 12 C.F.R. § 226.17.

In the present case, as to the number and amount of payments, defendant properly disclosed that plaintiffs had to make sixty payments of $701.21, followed by three hundred payments at an adjusted level of $983.49.  Defendant also properly based the adjusted level of payments on the initial interest rate.  See Commentary § 226.17(c)(1)-12.

With respect to payment periods, however, defendant disclosed the due dates of the first and last payments in a column in a box (known as the "federal box") on its TILDS but did not disclose the payment periods, i.e., that payments were due monthly, in either the column or the box.  Thus, it would appear that defendant failed to disclose the period of payments as required by TILA.  Defendant argues that its disclosures satisfy TILA because it included a sentence on its TILDS stating that "[t]his loan program allows you to select the type of payment you may make each month, in accordance with disclosures provided to you earlier," and because it provided plaintiffs with other documents indicating that they had to make monthly payments.  I agree with plaintiffs.

First, the sentence on which defendant relies does not focus on payment periods but on a borrower's right to select a type of payment.  The words "each month" modify the borrower's right to select.  Thus, an ordinary consumer would not conclude that the sentence established an obligation to make monthly payments.  Further, to the extent that the sentence relates to payment periods, it is ambiguous.  An ordinary consumer would interpret the sentence's authorization to "select the type of payment you make each month" as permission to decide for herself whether to make a payment each month and in what amount.  Thus, the sentence does not clearly require a borrower to pay monthly.

6

The sentence does not satisfy the clear and conspicuous requirement for other reasons as well. Defendant printed it in very small print and sandwiched it between the bottom of the federal box and information regarding the loan's lack of a demand feature, which defendant printed in larger print. Thus, the sentence would not draw the attention of an ordinary consumer. For this reason also, it is not conspicuous. See Van Jackson v. Check 'N Go of Ill., Inc., 193 F.R.D. 544, 548-49 (N.D. Ill. 2000) (finding TILA violation where disclosure was outside the federal box); see also Leathers v. Peoria Toyota-Volvo, 824 F. Supp. 155, 158 (C.D. Ill. 1993) (same).

In addition, because defendant located the sentence in a different place than the information concerning the number and amounts of payments, it did not group and segregate the disclosure as TILA requires, and it "obscure[d] the relationship of the terms to each other." Commentary § 226.17(a)(1).

Similarly, defendant's statements in other documents, the ARN and the ARR, that plaintiffs had to make monthly payments do not satisfy the segregation requirement. This is so because the statements would not draw the ordinary consumer's attention and because defendant did not group them with information regarding the number and amounts of payments, did not segregate the information concerning the payment schedule from the other terms of the loan and obscured the relationship of the terms regarding payment to each other.[2]

_____

[2]In Hamm v. Ameriquest Mortgage Co., No 05C0227, 2005 WL 2405804 (N.D. Ill. Sept. 27, 2005), the court held that a defendant's failure to include the period of payments in its TILDS did not violate TILA because the defendant provided the information in other documents and because there was no evidence that the plaintiff was confused by the omission. However, disclosures concerning the payment schedule must be "grouped together . . . segregated from everything else." 12 C.F.R. § 226.17. Further, whether or not the

7

For the foregoing reasons, defendant's disclosure of the period of payments portion of the payment schedule does not comply with TILA.

**2.  Disclosures of Cost of Loan as Annual Percentage Rate and Variable Interest Rate Feature**

Plaintiffs also argue that defendant's disclosures of the cost of the loan as an annual percentage rate ("APR") and the loan's variable interest rate feature are not clear as required by TILA.  I will consider both of plaintiffs' arguments in this section because the challenged disclosures are related and because the analyses of their clarity are largely similar.

**a.  Disclosure of Cost of Loan as Annual Percentage Rate**

Section 1638(a)(4) requires disclosure of the cost of a loan to the borrower "as an 'annual percentage rate' using that term."  Further, where, as here, a loan's initial interest rate is subsequently adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation."  Commentary § 226.(17)(C)-6.  In addition, § 1638(a)(8) requires lenders to provide a brief "descriptive explanation[ ]" of the APR.  <u>See also</u> § 226.18(e).  TILA's clear and conspicuous requirement applies to the disclosure and explanation of the cost of the loan as an annual percentage rate.  Commentary § 226.17(a)(1)-1.

On its TILDS, defendant stated that the APR was 4.047 percent and explained that this figure reflected the cost of the loan "as a yearly rate."  Plaintiffs contend that defendant provided other information in its TILDS and other disclosures that strongly implied that the

_____

borrower is confused is irrelevant.  <u>Handy</u>, 464 F.3d at 764.  Thus, <u>Hamm</u> appears to have been wrongly decided.  <u>See</u> <u>Washington v. Ameriquest Mortgage Co.</u>, No. 05C1007, 2006 WL 1980201(N.D. Ill. July 11, 2006) (rejecting <u>Hamm</u>).

8

cost of the loan expressed as a yearly rate was 1.950 percent and that therefore defendant's APR disclosure is unclear.  I agree.  An ordinary consumer reading defendant's disclosures would be confused about the cost of the loan, expressed as an annual percentage rate.

I note first that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all."  Barnes, 370 F.3d at 174.  Further, in determining whether a disclosure is clear as required by TILA, I may consider all of the information in a defendant's disclosures. Renuart & Keest, supra, § 4.2.4 (stating that TILA's clear and conspicuous standard requires that disclosures be understandable and that a lender which provides conflicting information about a transaction violates such standard); see also Handy, 464 F.3d at 764 (holding that where a lender provided a borrower with a correct disclosure but also provided the borrower with an incorrect form, the disclosure was unclear); Roberts v. Fleet Bank (R.I.), 342 F.3d 260, 267-68 (3d Cir. 2003) (stating that in determining whether a required disclosure is clear, a court may consider the other information that the lender provided to the borrower); Ralls v. Bank of N.Y., 230 B.R. 508, 516 (Bankr. E.D. Pa. 1999) (stating that where there was a contradiction between TILA disclosures and other information provided by the lender, the disclosures were unclear); Affatato v. Beneficial Corp., No. 96 CV 5376(NG),1998 WL 472494 (E.D.N.Y. Aug. 7, 1998) (denying motion to dismiss where the borrower alleged that the lender provided additional information which conflicted with the disclosures).

Defendant made several statements that conflicted with its disclosure that the cost of the loan as an annual percentage rate was 4.047 percent.  Defendant stated on its TILDS and in other disclosures, including its preliminary disclosures (the ARM and the preliminary TILDS) and documents that it provided at the closing (the ARN and the ARR), that the loan carried an interest rate of 1.950 percent.  In no disclosure did defendant mention any other interest

9

rate. Further, in its ARN, defendant stated that the 1.950 percent rate was a "yearly rate," the identical phrase that it used to define the APR. Thus, in addition to stating that the cost of the loan as a yearly rate was 4.047 percent, defendant suggested that the cost of the loan as a yearly rate was 1.950 percent. As previously indicated, however, the 1.950 percent rate was, in fact, a discounted or teaser rate, which applied only to the first monthly payment. However, defendant also muddied up this fact by failing to disclose, as it was required to do under § 226.19, that the rate was discounted, stating instead in its ARM only that the rate "may" have been discounted. Defendant's repeated references in its disclosures to the 1.950 percent rate, its characterization of such rate as a yearly rate and its lack of forthrightness about the discounted nature of the rate would both confuse and mislead an ordinary consumer about the cost of the loan as an annual percentage rate.[3]

Finally, on the back of its TILDS, defendant made another misleading statement, which in the context of its repeated references to the 1.950 percent rate could only add to an ordinary consumer's confusion as to the cost of the loan as an annual percentage rate. Defendant stated "if interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same." In fact, even if interest were the only finance charge, the annual percentage rate would not be 1.950 percent. Rather, the annual percentage rate was based on a composite of the discounted interest rate (1.950 percent) for as long as it was applied (one month) and the interest rate without the discount feature, which

_____

[3]Where the interest rate and the APR are merely different ways of calculating the cost of a loan as a yearly rate, disclosure of the interest rate might not confuse an ordinary consumer. See, e.g., Smith v. Anderson, 801 F.2d 661, 663-64 (4th Cir. 1986); In re Lewis, 290 B.R. 541, 549 (E.D. Pa. 2003); Robinson v. First Franklin Fin. Corp., No. 05-6652, 2006 WL 2540777, at *4 (E.D. Pa. Aug. 31, 2006). As discussed, however, in the present case, the 1.950 percent figure was a teaser rate and not the interest rate on the loan.

10

was much higher.

For the foregoing reasons, defendant's disclosure of the cost of the loan as an annual percentage rate was unclear.

### b.    Disclosure of Variable Interest Rate Feature

Plaintiffs also allege that defendant did not clearly disclose that the loan had a variable interest rate feature.  If a loan has such a feature, the lender must make certain preliminary disclosures and also disclose the existence of the feature on its TILDS.  12 C.F.R. § 226.18(f).  Plaintiffs allege that although defendant stated on its TILDS that the loan had a variable interest rate feature, it also included information on the TILDS which misleadingly implied that the feature did not take effect until after the first five years of the loan.  I agree.

I again note that a lender may cause a disclosure to become unclear by including conflicting information in its disclosures.  See Handy, 464 F.3d at 764; Barnes, 370 F.3d at 174; Roberts, 342 F.3d at 267-68; In re Ralls, 230 B.R. at 516; Affatato, 1998 WL 472494, at *3.  In the present case, defendant included information on its TILDS from which an ordinary consumer could easily infer that the interest rate on the loan was fixed for five years and became variable thereafter.  Specifically, defendant stated on its TILDS that plaintiffs' loan was a "5-year fixed" loan.  This statement was confusing because although it is true that the payments on the loan were fixed for five years, the interest rate was not.  Defendant could easily have indicated this by including the word "payments" after the word "fixed" on its TILDS, but it did not do so.  Rather than narrowing the application of "fixed," defendant used the word to describe the general nature of the loan.  Further, defendant placed the "5-year fixed" language immediately above its statement that the interest rate was 1.950 percent and thus strengthened the implication that the five-year fixed language applied to the interest rate.  An

11

ordinary consumer reading defendant's TILDS could easily conclude that the interest rate was fixed for five years and variable in the last twenty-five. Further, defendant misleadingly stated in its ARN and ARR that in August 2004 the interest rate "may" change not that, as defendant well knew, it <u>would</u> change.

Defendant responds that it stated in other disclosures as well as the TILDS that the loan had a variable rate feature. However, to be unclear, TILA requires only that a disclosure be capable of being plausibly interpreted in more than one way. An ordinary consumer reading defendant's TILDS could plausibly conclude that the loan had a variable interest rate feature which took effect after the first five years of the loan. Therefore, defendant's disclosure violated TILA.

### 3. Information Added to TILDS

TILA bars a lender from adding information to its TILDS that is not "directly related" to required information. 12 C.F.R. 226.17(a). Plaintiffs argue that defendant's statement on its TILDS that the loan's interest rate was 1.950 percent violated this prohibition. In determining whether information is directly related to required information, I ask whether the added information is meaningfully connected to the required information and whether it is likely to be useful to an ordinary borrower. <u>See, e.g.</u>, <u>Goldberg v. Del. Olds, Inc.</u>, 670 F. Supp. 125, 129 (D. Del. 1987), <u>aff'd</u>, 845 F.2d 1011 (3d Cir. 1988). TILA does not require a lender to disclose a loan's interest rate. Further, in the present case, defendant was most assuredly not required to disclose the 1.950 percent rate, which applied only to the first monthly payment. However, as discussed, defendant included the 1.950 percent rate on its TILDS. Yet the 1.950 percent figure had virtually no relation to any information required to be disclosed on the TILDS, much less a direct relation. The 1.950 percent rate had no significant

12

connection to the cost of the loan. Moreover, a reference to the 1.950 percent rate would not be useful to an ordinary borrower because it would cause the loan to appear more attractive than it actually was and serve no useful purpose. Thus, by adding information to its TILDS that was not directly related to that required, defendant violated TILA.

### 4. Disclosure of Possibility of Negative Amortization

Finally, plaintiffs allege that defendant did not sufficiently disclose the consequences of negative amortization. The Commentary to 226.19(b)(2)(v) explains that "[a] creditor must disclose, where applicable, the possibility of negative amortization." Where, as here, a loan permits a borrower to make payments at a fixed level, "the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal balance will increase)." Commentary § 226.19(2).

In its ARM disclosure, defendant stated that:

Interest Rate changes and your ability to make less than a Fully Amortizing Payment each month, or a combination of the two, may result in the accumulation of accrued but unpaid interest ('Deferred Interest Balance').

Each month that the payment option you choose is less than the entire interest portion, we will add the Deferred Interest Balance to your unpaid principal. We will also add interest on the Deferred Interest Balance to your unpaid principal each month. The interest rate on the Deferred Interest Balance will be the Fully Indexed Rate.

Although defendant did not use the language suggested by the commentary, it did inform borrowers as to what would occur if they made only the minimum monthly payments. Thus, defendant's disclosure satisfied TILA.

### C. Available Remedies

As remedies for defendant's TILA violations, plaintiffs seek (1) statutory damages; (2)

13

a declaration that they may rescind the loan; and (3) attorneys fees.  Plaintiffs do not seek actual damages.  Defendant argues that the remedies that plaintiffs seek are unavailable.

### 1. Statutory Damages

A TILA plaintiff may recover statutory damages "only" if the defendant fails "to comply with the requirements of section 1635 . . . or of paragraph (2)  (insofar as it requires a disclosure of the 'amount financed'), (3), (4), (5), (6), or (9) of section 1638(a)."  15 U.S.C. § 1640(a).  In <u>Brown v. Payday Check Advance, Inc.</u>, 202 F.3d 987, 991 (7th Cir. 2000), the Seventh Circuit held that § 1640(a)'s use of the word "'only' . . . confines statutory damages to a closed list" of violations of § 1638.  <u>See also</u> <u>Baker v. Sunny Chevrolet, Inc.</u>, 349 F.3d 862, 869 (6th Cir. 2003) (stating that § 1640(a) "creates two types of violations: (a) complete non-disclosure of enumerated items in § 1638(a), which is punishable by statutory damages; and (b) disclosure of the enumerated items in § 1638(a) but NOT in the manner required by the Regulation and § 1638(b)(1), which is not subject to statutory damages").

As previously discussed, defendant violated §§ 1632 and 1638(b) by failing to clearly and conspicuously disclose and segregate information relating to the payment schedule, by failing to clearly disclose the APR and the existence of a variable interest rate feature, and by adding to its TILDS information not directly related to required information.  Neither violations of § 1632 or § 1638(b) are among the TILA violations enumerated in § 1640(a) for which statutory damages are available.  Therefore, plaintiffs are not entitled to statutory damages.

### 2. Rescission

Under some circumstances, a TILA plaintiff may rescind a loan.  15 U.S.C. § 1635; 12

Case 2:05-cv-00454-LA   Filed 01/16/07   Page 14 of 23   Document 81

C.F.R. § 226.23. Generally, a borrower has three days to rescind after the closing or receipt of notice of the right to rescind along with all material disclosures. If a lender fails to provide a borrower with notice of the right to rescind or if the lender fails to make a material disclosure, the period in which a plaintiff may exercise the right to rescind is extended. "Material disclosures" are "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, [and] the payment schedule." 12 C.F.R. § 225.23(2). "Failure to provide information regarding the annual percentage rate also includes failure to inform the consumer of the existence of a variable rate feature." Commentary § 23(2)(3)-2. Defendant's failures to clearly and conspicuously disclose the payment period, the annual percentage rate and the variable interest rate feature all involve material disclosures for purposes of the right of rescission.[4] 12 C.F.R. § 226.23. Thus, plaintiffs may avail themselves of the remedy of rescission.

### 3. Attorneys' Fees

A TILA plaintiff may obtain attorneys' fees and costs if she is "determined to have a right of rescission under section 1635." 15 U.S.C. § 1640(3). Because I have determined that plaintiffs have a right of rescission, they are entitled to attorneys' fees.

### III. MOTION FOR CLASS CERTIFICATION

### A. Availability of Class Certification

In the present case, on behalf of themselves and putative class members, plaintiffs seek a declaratory judgment that they may rescind the loan. Defendant argues that a TILA plaintiff seeking a declaratory judgment that she is entitled to rescission may not utilize the

---

[4]Defendant's addition of information on its TILDS not directly related to required information does not involve a material disclosure. 12 C.F.R. § 226.23(a)(3)(n.48).

class action mechanism. Although courts have analyzed the class action issue differently insofar as it relates to the right to rescind, compare James v. Home Construction of Mobile, Inc., 621 F.2d 727, 730 (5th Cir. 1980), with McKenna v. First Horizon Home Loan Corp., 429 F. Supp. 2d 291, 296 (D. Mass 2006); and Latham v. Residential Loan Ctrs. of Am., Inc., No. 03C7094, 2004 WL 1093315, at *5 (N.D. Ill. May 6, 2004), I conclude that a TILA plaintiff seeking a declaration that she may rescind a loan may represent a class.

First, "'there is nothing in the language of TILA which precludes the use of the class action mechanisms provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission.'" Rodrigues v. Members Mortgage Co., Inc., 226 F.R.D. 147, 153 (D. Mass. 2005) (quoting Williams v. Empire Funding Corp., 183 F.R.D. 428, 436 (E.D. Pa. 1998)). I do not find it significant that Congress referred to class actions when in 1974 it amended § 1640 to set a damages cap but made no comparable reference when it subsequently amended § 1635, which governs rescission claims. It is just as likely that Congress did not intend to limit rescission claims in any way. McKenna, 429 F. Supp. 2d at 291.

Second, assuming a TILA plaintiff can satisfy the requirements of Fed. R. Civ. P. 23, public policy strongly favors allowing class actions in cases like the present one. Class actions serve the purpose of providing compensation in cases involving public wrongs and widespread injuries. There is no reason why a plaintiff who alleges that a defendant has violated TILA and caused widespread injuries should not be able to bring a class action. Denial of class action status would reward defendants who may have committed wrongs and leave victims who may have been wronged uncompensated. Note, Class Actions Under the

16

Truth in Lending Act, 83 Yale L.J. 1416, 1435 (1974).

**B.      Requirements for Class Certification**

In order to obtain class certification, plaintiffs must satisfy several requirements.  First, they must have standing to sue.  Rozema v. Marshfield Clinic, 174 F.R.D. 425, 432 (W.D. Wis. 1997).  The facts previously discussed indicate that plaintiffs have standing.  In addition, plaintiffs must satisfy the criteria in Fed. R. Civ. P. 23.  Rule 23(a) requires plaintiffs to establish (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If they satisfy these requirements, they must also meet one of the requirements of Rule 23(b). In addition, it is implicit in Rule 23 that plaintiffs establish the existence of a definable class. Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992).

**1.      Fed. R. Civ. P. 23(a)**

**a.      Numerosity**

Rule 23(a)(1) requires that potential class members be "so numerous that joinder of all members is impracticable."  To satisfy this requirement, a plaintiff need only show that joinder would be difficult or inconvenient.  Robidoux v. Celani, 987 F.2d 931, 935 (2nd Cir. 1993).  A plaintiff will generally meet the requirement by showing that the putative class consists of forty or more.  Clarke v. Ford Motor Co., 220 F.R.D. 568, 578 (E.D. Wis. 2004). In the present case, plaintiffs present evidence that defendant extended about 7,000 loans in which the TILA disclosure contained some or all of the deficiencies discussed above.  Thus, plaintiffs satisfy the numerosity requirement.

**b.      Commonality**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."

Generally, the presence of a single common legal or factual question is sufficient. Clarke, 220 F.R.D. at 579 (stating that the commonality requirement is not demanding because it may be satisfied by a single common issue). Rule 23(a)(2) generally looks to whether the defendant's conduct is common to class members, rather than to whether the result of the conduct is uniform among class members. Rosario, 963 F.2d at 1018. In the present case, whether defendant's disclosures of the payment schedule, the cost of the loan as an annual percentage rate and the variable interest rate feature of the loan violated TILA is a question common to the class.

Defendant argues that plaintiffs fail to establish commonality because rescission is a personal and equitable remedy, which is only available based on the particular facts of a case. However, plaintiffs do not seek rescission of an entire class of transactions but only a declaration that each class member may rescind if he or she wishes to do so. See, e.g., Williams, 183 F.R.D. at 435; see also McIntosh v. Irwin Union Bank & Tr. Co., 215 F.R.D. 26, 33 (D. Mass 2003). As the Williams court explained:

> plaintiffs only seek a declaration that . . . each member of the class is entitled to seek rescission. Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission.

183 F.R.D. at 435-36. Further, as to any member of the class who sought to exercise his or her statutory right to rescind, defendant would be entitled to exercise any right it had under the statute.

Thus, plaintiffs satisfy the commonality requirement.

### c. Typicality

Rule 23(a)(3) requires that the claims of the class representative be "typical of the

18

claims . . . of the class." Typicality does not require a complete identity of claims. <u>Clarke</u>, 220 F.R.D. at 579 (stating that typicality does not require that the named plaintiff be in the same position as every member of the class). Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics as those of the putative class. <u>Id.</u> If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. Since the claims only need to share the same essential characteristics and need not be identical, the typicality requirement is not highly demanding. <u>Id.</u> In the present case, plaintiffs' claims and those of members of the putative class arise out of the same documents and are based on the same legal theory. Therefore, plaintiffs meet their burden of establishing typicality.

### d. Adequacy of Representation

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." In determining the adequacy of representation, courts consider the adequacy of the class representative and of class counsel. <u>Retired Chi. Police Ass'n v. City of Chi.</u>, 7 F.3d 584, 596 (7th Cir. 1993). The interest of the representative must not conflict with those of the class and class counsel must be qualified. In the present case, both plaintiffs and class counsel present evidence supporting their adequacy. Plaintiffs submit affidavits attesting to their commitment to the class, and counsel submits evidence of prior relevant experience. Thus, plaintiffs satisfy the requirement of Rule 23(a)(4).

### 2. Rule 23(b)

In order to obtain class certification, a plaintiff must also satisfy the requirements of one of the subsections of Rule 23(b). In the present case, plaintiffs seeks certification under Rule

23(b)(2) or, alternatively, under Rule 23(b)(3).

There are significant distinctions between class actions certified under Rule 23(b)(2) and those certified under subdivision (b)(3). Rule 23(b)(3) is so general that it encompasses all class actions, whereas actions certified under subdivision (b)(2) represent specialized categories of class actions. Unlike actions certified under Rule 23(b)(3), in Rule 23(b)(2) actions, it is not mandatory to give notice of the pendency of the action to class members, class members do not have the right to opt out of the action prior to judgment on the merits, and certification is less burdensome on the parties and the court. Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 4:19 (4th ed. 2002).

Thus, actions that qualify for class certification under subdivision (b)(2) should not generally be certified under subdivision (b)(3). Id.; VanGemert v. Boeing Co., 259 F. Supp. 125, 130-31 (S.D.N.Y. 1966) (articulating principle that actions under subdivisions (b)(1) and (b)(2) are preferred over suits under (b)(3)); see also Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co., 140 F.R.D. 474, 477 (S.D. Ga. 1991) (stating that it is desirable to certify class actions under subdivisions (b)(1) or (2) because its members do not have right to exclude themselves from binding effect of class action judgment). Thus, I ask first whether the present action is certifiable under subdivision (b)(2).

Rule 23(b)(2) provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Thus, in the present case, certification is proper under the rule if defendant's inaction with respect to plaintiffs affected the entire class and if declaratory relief would be appropriate for the entire class. Plaintiffs allege that defendant has contested

20

their TILA claims and that defendant's arguments would be largely the same with respect to each class member.  Thus, defendant has "refused to act on grounds generally applicable to the class," id., and the first requirement of Rule 23(b) is satisfied.

I now ask whether declaratory relief is appropriate with respect to the entire class.  The principal criteria for determining whether declaratory relief is appropriate are whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and whether it will terminate the uncertainty giving rise to the proceeding.  Gammon v. GC Servs. Ltd. P'ship, 162 F.R.D. 313, 320 (N.D. Ill. 1995).  In the present case, a declaratory judgment would settle the issue of whether defendant violated TILA and, if so, whether such violation gives rise to the right to rescind.  Therefore, declaratory relief is appropriate with respect to the entire class.

Thus, I conclude that plaintiffs are entitled to class certification under Rule 23(b)(2).

**C.    Definition of Class**

The definition of a class must be precise enough to enable the court to determine whether at any given time a particular individual is or is not a member of the class.  See Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir. 1977).  A court must be able to resolve the question of an individual's membership by reference to objective criteria. Elliott v. ITT Corp., 150 F.R.D. 569, 574 (N.D. Ill. 1992).  However, when a plaintiff attempts to certify a class under Rule 23(b)(2) for the purpose of seeking injunctive or declaratory relief, a precise class definition is less critical.  See Battle v. Commonw. of Pa., 629 F.2d 269, 271 n.1 (3rd Cir. 1980).  The fact that a class includes persons who will become members in the future does not render it impermissibly indefinite.  Probe v. State Teacher's Ret. Sys., 780 F.2d 776, 780 (9th Cir. 1986).

21

In the present case, I conclude that it is appropriate to include in the class those persons (1) who obtained an adjustable rate mortgage from defendant on their primary residence, (2) between April 20, 2004 and the date of class certification, and (3) who received a TILDS that contained language identical to that of any one of the three material disclosures[5] that I have found deficient.

**D.     Notice to Class Members**

Although it is not mandatory to notify members of a class certified under Rule 23(b) of the pendency of the action, it is necessary to provide such notice in the present case so that class members will learn of their right to rescind.  Moreover, I am authorized to make an appropriate order regarding notice under Rule 23(d)(2)a.  However, before entering such an order, I wish to hear from the parties concerning what sort of notice is appropriate.  Therefore, plaintiffs should file a proposal regarding notice by **February 2, 2007**.  Defendant may file a response by **February 16, 2007**, and plaintiffs may reply by **March 2, 2007.**

## IV.  CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that plaintiffs' and defendant's motions for summary judgment are **GRANTED IN PART AND DENIED IN PART** as stated above.

**IT IS FURTHER ORDERED** that plaintiffs' motion for class certification is **GRANTED**

---

[5]Defendant argues that some borrowers received a TILDS which included "pa" or "pay" next to the "5-year fixed" language, and that I should not include such borrowers in the class because the additional language might change both the clarity and the typicality analyses. Although neither party has provided me with a copy of a TILDS containing such language or discussed the matter in depth, I tend to agree with defendant.  Therefore, I decline to include persons who received disclosures of this type in the class.

22

as stated above.

**FINALLY, IT IS ORDERED** that the parties advise the court concerning notification of

class members as stated above.

Dated at Milwaukee, Wisconsin this 16 day of January, 2007.


/s_____
LYNN ADELMAN
District Judge

23