IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**SUSAN and BRYAN ANDREWS,**
       **Plaintiffs,**

v.                                                              Case No. 05C0454

**CHEVY CHASE BANK, FSB,**
       **Defendant.**

## MEMORANDUM

On January 16, 2007, I concluded that defendant violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., in several respects. I also concluded that a number of the violations were material as defined in § 1638(f) and 12 C.F.R. § 226.23 and, as a result, extended by three years the time that borrowers aggrieved by such violations had to exercise their right of rescission pursuant to § 1635. Pursuant to Fed. R. Civ. P. 23(b)(2), I certified a class of such borrowers, leaving the decision as to whether to actually seek rescission to each individual class member. Defendant appealed my decision certifying a class, and pursuant to Fed. R. Civ. P. 23(f), the court of appeals permitted the appeal. Subsequently, also pursuant to Rule 23(f), defendant asked me to stay proceedings in this court pending appeal. On February 3, 2007, I granted the stay, and in the present memorandum I explain my reasons for doing so.

In determining whether to grant defendant's request for a stay, I applied the balancing test applicable to injunctions and other stays pending appeal. See In re Lorazepam & Clorazepate Antitrust Litig., 208 F.R.D. 1, 3 (D.D.C. 2002). The balancing test requires consideration of:

(1) whether the stay applicant has made a strong showing that he is likely to

succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

In re Application of Proctor & Gamble Co., 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

**A.     Likelihood of Success on Appeal**

I first discuss the likelihood that defendant will succeed on appeal.  Defendant argued that it is likely to succeed on appeal because (1) TILA bars certification of a class of borrowers who have the right to seek rescission, and (2) even if TILA does not bar certification of such a class, I defined the class too broadly.  Notwithstanding McKenna v. First Horizon Home Loan Corp., No. 06-808, 2007 WL 210850 (1st Cir. Jan. 29, 2007), I found defendant's first argument unpersuasive.  With all due respect to the First Circuit, nothing in the text of TILA supports the proposition that TILA bars courts from certifying classes whose members may seek rescission.  Moreover, in concluding that TILA bars certification of such classes, the McKenna court used legislative intent and legislative history in a way that the Seventh Circuit has condemned.

Congress enacted TILA in 1968.  Initially fearful that sizeable damage awards could harm the credit industry, some district courts found that TILA did not permit class actions, and others found various reasons for denying class certification.  See, e.g., Ratner v. Chem. Bank, N.Y. Trust Co., 329 F. Supp. 270, 274 (S.D.N.Y. 1974).  However, in Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 344 (10th Cir. 1973), the Tenth Circuit rejected the notion that TILA prohibited class actions, concluding that "there is nothing in the Act itself, the Rule [Rule 23] or the notes of the Advisory Committee on Rules of Civil Procedure with respect to it which expressly or impliedly precludes class actions of this type of case."  Id.  Noting the

2

relative absence of recorded legislative intent, the court concluded that "[t]o find any congressional intent to preclude at all events treatment of such cases under Rule 23 would be a work of clairvoyance and not of construction or interpretation." Id. Thus, the court concluded that under TILA district courts should certify classes if the requirements of Rule 23 were satisfied.

The Seventh Circuit reached the same conclusion. In Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1163 (7th Cir. 1974), the court stated that "the trial court's decision to deny class action status in this case was posited on the legal theory that the procedural device of class actions is incompatible with the substantive ends to which the Truth in Lending Act is addressed. We cannot agree." The Haynes court based its decision on three factors: (1) that plaintiffs had long used class actions extensively in antitrust and securities litigation without special legislative authorization, and although cognizant of such activity, Congress in enacting TILA said nothing suggesting that it intended a different result under TILA; (2) that TILA had a dual purpose of providing incentives to private litigants and inducing creditor compliance, thus "creditors disregarding their responsibilities under the Act and causing damages to members of a class however limited or extensive should have no assurance that their accumulated responsibility cannot be enforced through this means"; and (3) that although it was important not to harm the credit industry, "it is at least equally important to prevent violators of the Act from limiting recovery to a few individuals where actual, wide-spread noncompliance is found to exist." Id. at 1163-64.

In 1974, Congress amended TILA, limiting the potential liability of lenders by capping statutory damages in class actions. However, Congress did not bar TILA class actions either in damage cases or where the violation gives rise to a right of rescission. Subsequently, the

3

Seventh Circuit reiterated its position that TILA does not bar class actions and that in determining whether to certify classes in TILA cases, district courts should only consider whether the requirements of Rule 23 are met. Goldman v. First Nat'l Bank of Chi., 532 F.2d 10, 14-15 (7th Cir. 1976). Other circuits agree. See, e.g., Johnson v. West Suburban Bank, 225 F.3d 366, 371 (3d Cir. 2000) (stating that "although the statute clearly contemplates class actions, there are no provisions within the law that create a right to bring them. . . . The 'right' to proceed as a class action, insofar as the TILA is concerned, is a procedural one that arises from the Federal Rules of Civil Procedure."). Nevertheless, from the fact that the 1974 amendment imposed a cap on statutory damages in class actions seeking damages (but made no mention of class actions involving the right of rescission), the McKenna court inferred that Congress intended to bar class actions in TILA cases where rescission is the only available remedy. However, nothing in the text of the amendment justifies this inference. It is just as likely that Congress remained silent about class actions involving the right of rescission because it did not regard such actions as posing the same economic threat to the credit industry as class actions involving damages or because it never considered the issue.

Congress also amended TILA in 1995 in response to Rodash v. AIB Mortgage Co., 16 F.3d 1142 (11th Cir. 1994), in which the Eleventh Circuit authorized a borrower to rescind based on a minor TILA violation. Specifically, Congress initially enacted a six month moratorium on class actions involving minor TILA violations and subsequently limited the grounds on which a borrower could rescind as well as making several other changes in the law. Again, however, Congress did not bar class actions involving the right of rescission. Nevertheless, the McKenna court relied on the 1995 amendment to bolster its conclusion that Congress intended to preclude TILA class actions involving the right to rescind. However, like

4

the 1974 amendment, the 1995 amendment does not bear the weight the McKenna court placed on it.

The McKenna court inferred a congressional intent to bar district courts from certifying classes whose members may seek rescission based on what "it gleaned from the legislative history" of the 1974 and 1995 amendments. McKenna, 2007 WL 210850, at *6. However, in seeking to ascertain legislative intent, the court misunderstood that "the search is not for the contents of the authors' heads," Matter of Sinclair, 870 F.2d 1340, 1342 (7th Cir. 1989), but for "what Congress meant by what it said." Id. at 1343 (emphasis added). Where the language of a statute is plain and does not lead to an absurd result, the language itself "is the sole evidence of the ultimate legislative intent." Id. at 1344 (quoting Caminetti v. United States, 242 U.S. 470, 490 (1917)). The language of TILA is plain. It does not bar courts from certifying classes whose members have a right to rescind. Nor is the absence of such a bar absurd. In sum, the McKenna court should have asked "what the statute means" rather than "what the legislature meant." Id. at 1343 (quoting Oliver Wendell Holmes, The Theory of Legal Interpretation, 12 Harv. L. Rev. 417, 417-19 (1899), reprinted in Collected Legal Papers, 204, 207 (1920)).

The McKenna court also used legislative history improperly. Legislative history may illuminate the meaning of a text, but it cannot be used to create a rule not found in the text. See id. at 1344 (stating that legislative history "is not a source of legal rules competing with those found in the United States Code"). Both the 1974 and 1995 amendments to TILA demonstrate that Congress chose to accomplish the goal of limiting lender liability by means other than prohibiting courts from certifying classes whose members may seek rescission. As the Seventh Circuit recently indicated, the fact that a statute subjects a party to severe

liability does not give courts a license not to enforce it. See Murray v. GMAC Mortgage Corp., 434 F.3d 948, 953-54 (7th Cir. 2006) (stating that if Congress wishes to amend a statute to limit liability, if of course may do so, but that "while a statute remains on the books, however, it must be enforced rather than subverted."). By relying on legislative history to reach the contrary conclusion, the McKenna court engaged in "clairvoyance . . . not . . . construction or interpretation." Wilcox, 474 F.2d at 344.

Toward the end of its decision, the McKenna court made an observation that illustrates the problematic nature of its use of legislative intent and legislative history. The court stated: "Last – but not least – we note that the TILA already includes significant incentives for creditor compliance with its strictures, thus casting serious doubt on the need for a class-action mechanism with respect to rescission." (footnote omitted.) McKenna, 2007 WL 210850, at *7. Once again, with all due respect, the question of what mechanisms are needed to obtain creditor compliance with federal banking requirements is for Congress, not the courts to determine.[1]

With respect to the propriety of certification under Rule 23, the McKenna court also stated that it saw no meaningful distinction "between a suit for a declaratory judgment that rescission is possible and a suit for rescission simpliciter," id., and thus declined to distinguish James v. Home Construction Company of Mobile, Inc., 621 F.2d 727, 731 (5th Cir. 1980),

---

[1]The McKenna court also likely exaggerated the potential harm to lenders from courts certifying classes whose members may rescind. As the court itself noted, not all borrowers will choose to rescind loans. In addition, in some cases, it is likely that the strict three year period for rescission will have run. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 419 (1998) (stating that TILA does not permit rescission "after the 3-year period of § 1635(f) has run"). Further, rescission is an equitable remedy, and in determining whether to grant rescission and on what terms, courts may consider the individual circumstances of the case before them.

6

which involved the latter. In refusing to distinguish declaratory actions from rescission actions, the McKenna court relied on the need to shield lenders from liability and the personal nature of the rescission remedy. McKenna, 2007 WL 210850, at *6. However, as we have seen, it is not the business of courts to shield lenders from liability in ways that Congress has not. Further, the personal aspects of rescission do not come into play in a declaratory action but only after a borrower actually attempts to rescind. There is nothing personal about declaring that a class of borrowers who received the same misleading disclosure incurred a TILA violation and that as a result the statutory right to rescind is extended from three days to three years. In fact, the creation of such a declaratory class promotes the goals of TILA and Rule 23 because it provides a mechanism for notifying borrowers of the violation. Further, as in the present case, TILA plaintiffs often seek both statutory damages and a declaration that a lender's alleged violations are material for purposes of rescission. In such cases, it makes little sense to preclude a court already deciding whether borrowers seeking statutory damages constitute a class from determining whether a common violation is material for purposes of extending the rescission period.

For the reasons stated, I concluded that defendant should not prevail on appeal based on McKenna. However, I recognized that the Seventh Circuit may disagree with me and agree with a sister circuit. Further, I agreed with defendant that I likely defined the class too broadly, and that if the class action survives, the class definition will have to be narrowed. I did not take into account that TILA prohibits certain borrowers from rescinding, i.e., if their loan is for the purpose of construction or purchase, § 1635(e)(1), or involves a refinancing by the lender who made the initial loan and is secured by the same collateral. § 1635(e)(2). Thus, the class should include only borrowers who refinanced a loan with a different lender

7

or refinanced a loan with the same lender but secured it with different collateral.

**B.    Irreparable Injury/Public Interest**

I discuss the irreparable injury and public interest factors together as they are related. Defendant argued that it would be irreparably injured absent a stay because it would have to send notices, provide discovery and respond to claims even though the class action might not proceed. Plaintiffs argued that they would be irreparably harmed by a stay because the three year limitation period, which begins to run in April 2007, would run out on some class members before they were made aware of their right to rescind. Although I considered it a close question, I ultimately concluded that the need to clarify whether a court could certify a class whose members have a right to rescind tipped the balance slightly in favor of defendant.

**C.    Conclusion**

For the reasons stated, I concluded that I should grant defendant's request for a stay pending appeal.

Dated at Milwaukee, Wisconsin this 14 day of February, 2007.

/s_____
LYNN ADELMAN
District Judge